INSURANCE COMPANY OF NORTH AMERICA, PLAINTIFF-APPELLANT, v. CHARLES R. HOWELL, COMMISSIONER OF BANKING AND INSURANCE OF THE STATE OF NEW JERSEY, RESPONDENT-DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued February 4, 1963—Supplemental Memoranda filed March 9, 1963—Decided July 16, 1963.

Before Judges GOLDMANN, FREUND and FOLEY.

*Mr. Ralph S. Mason* argued the cause for appellant (*Messrs. Mason, Griffin, Moore & Cook*, attorneys).

*Mr. Steven S. Radin*, Deputy Attorney General, argued the cause for respondent (*Mr. Arthur J. Sills*, Attorney General, attorney).

*Messrs. Feuerstein and Sachs*, attorneys, filed a brief *amicus curiae* for New Jersey Association of Insurance Agents (*Mr. Harold D. Feuerstein*, on the brief).

The opinion of the court was delivered by

GOLDMANN, S. J. A. D. Insurance Company of North America (INA) appeals under *R. R.* 4:88–8(a) from a determination of the Commissioner of Banking and Insurance (Commissioner) that the 90-day "deemer" provision of *N. J. S. A.* 17:29A–7 was inapplicable to certain filings made with the Commissioner and hereinafter described.

The Insurance Rating Law of New Jersey (*N. J. S. A.* 17:29A–1 *et seq.*) requires that "every insurer, before using or applying any rate to any kind of insurance, file with the Commissioner a copy of the rating-system upon which such rate is based, or by which it is fixed or determined." The filings may, on written notice by the insurer to the Commissioner, be made on its behalf by a rating organization of which it is a member or subscriber. *N. J. S. A.* 17:29A–6. In compliance with this filing requirement, INA made six filings with the Commissioner, as follows: (1) Church, School-College Policy; (2) Retailers and Wholesalers Policy; (3) Inland Marine Filing: Camera and Photographic Equipment Dealers, etc., Policy (revision); (4) Merchants Property Policy (revision); (5) Inland Marine Manual (revision), and (6) Deductible Insurance Plan (revision).

### I.

1. *Church, School-College Policy.* This is described by INA as in fact two separate contracts—a Church Policy and a School-College Policy. The Church Policy is designed for churches and chapels, synagogues, monasteries, convents, orphanages and homes, and provides insurance for real property, personal property, loss of income and legal liability for property damage or bodily injury. The School-College Policy is described as a specially designed package policy for educational institutions, providing fundamentally the same coverage as the Church Policy does for churches. INA characterizes both policies as similar in concept to the Homeowners Policy it introduced some 12 years ago. One of the advantages of a package policy is that there will accrue to the insured a discount in premium reflecting administrative expense savings and other factors pertinent to the issuance of a multiple-coverage contract. The coverage of the two policies making up the Church, School-College Policy is extensive, including fire, extended coverage, vandalism, burglary, medical payments, money and securities, and a number of other insurable risks. The filing was made on May 29, 1962

through the Fire Insurance Rating Organization of New Jersey (FIRO), of which INA is a member.

In the Commissioner's view, the Church, School-College Policy is essentially a combination of coverages contained in rating systems previously approved. The Commissioner points out that a Public Institutional Property Program (PIPP) was filed with him on September 8, 1960 pursuant to the Insurance Rating Law by FIRO on behalf of INA, and included coverages of fire, extended coverage, vandalism and malicious mischief, and sprinkler leakage. The Commissioner contends that the Church, School-College Policy consists of the PIPP filed by FIRO plus the rating systems filed by INA as an independent, with a range of coverage which includes burglary, medical payments, liability, money and securities, and a number of others.

INA insists that its policy is not just a combination of PIPP with other coverages: no mere joining together would provide all the coverages provided for in the most limited form of its proposed policy; the eligibility rules for PIPP are such that many risks eligible for coverage under the Church, School-College Policy would not be eligible for coverage under PIPP; and, finally, the rating procedures for this policy differ from those used for PIPP.

INA claims that the policy comprises a complete rating system and is an original filing, subject to the provisions of *N. J. S. A.* 17:29A–7. On the other hand, the Commissioner contends that the policy is merely an alteration, supplement or amendment of previously existing rate filings, and is therefore governed by *N. J. S. A.* 17:29A–14. Both statutes will be discussed hereafter.

2. *Retailers and Wholesalers Policy.* INA describes this policy as the first package policy in New Jersey available for mercantile establishments. It is similar in scope and coverage to the Church, School-College Policy and contains similar advantages to the insured. The policy was filed with the Commissioner through FIRO on February 27, 1962, and a revised filing was made on May 2, 1962. The Commissioner

approved the program on May 11, 1962, with the exception of its Annual Payment of Premium Plan and five forms of endorsements, all of which broaden or extend the basic coverages. INA represents that the Annual Payment of Premium Plan eliminates the expiration date and provides continuous coverage so long as the premium is paid. The premium charged is based upon the rate in effect on the policy's anniversary date.

The Commissioner calls attention to the fact that included in the basic rating system filed by FIRO on behalf of INA since the inception of rate regulation in 1944 (*L.* 1944, *c.* 27) is an annual premium payment plan. He contends that INA's Annual Premium Payment Plan is one applicable to a policy which may be written without a stated expiration date. This type of plan is not contained in the basic rating system already on file and hence constitutes an alteration, supplement or amendment of that system. Accordingly, the plan falls within *N. J. S. A.* 17:29A:-14. INA takes the position that the Annual Payment of Premium Plan represents an original rating system and falls under *N. J. S. A.* 17:29A-7, and the five forms of endorsement fall under *N. J. S. A.* 17:36-5.22 relating to forms and discussed below.

3. *Inland Marine Filing: Camera and Photographic Equipment Dealers, etc., Policy.* This policy provides protection for the stock of certain retailers and wholesalers on a broad "all-risk" basis. INA filed it with the Commissioner on May 14, 1962. It admits that the filing effected a revision in rates and rating techniques, and therefore constitutes an alteration, supplement or amendment to a rating system, falling within *N. J. S. A.* 17:29A-14.

4. *Merchants Property Policy.* This policy provides protection for the stock of certain retailers and wholesalers on a broad "all-risk" basis. It was filed with the Commissioner through FIRO on May 18, 1962. INA admits that it falls within *N. J. S. A.* 17:29A-14 since it, too, effected a revision in rates and rating techniques and therefore constituted an alteration, supplement or amendment to a rating system.

5. *Inland Marine Manual.* This is the 28th revision of the manual which INA distributes to its agents for use in ascertaining rules and rates applicable to Inland Marine Policies. The purpose of the revision was to make changes in certain coverages and to reduce certain rates so as to be more competitive. INA made the filing with the Commissioner on June 18, 1962. It is admitted that this filing also constituted an alteration, supplement or amendment to an existing rating system, and so falls under *N. J. S. A.* 17:29A–14.

6. *Deductible Insurance Plan.* For a number of years FIRO, on behalf of INA, has filed and had approved a deductible insurance program whereby the insured may purchase fire insurance with a deductible feature at a reduced rate. Under this program the insured was prohibited from securing insurance to cover the deductible amount, or any part of it: the Commissioner accepted the program on condition that the deductible amount be solely at the risk of the insured and not covered under any other policy. INA filed the Deductible Insurance Plan with the Commissioner through FIRO on August 1, 1962. The filing revised the existing plan to modify the prohibition against securing insurance to cover the deductible amount.

INA calls attention to the fact that the proposed plan contains no rates, nor is it used to ascertain rates. It is nothing more than a revision in form, and as a form filing falls under *N. J. S. A.* 17:36–5.22. The Commissioner, on the other hand, claims that petitioner is attempting to modify the condition which has always been imposed in approving deductible insurance plans, for it will give the insured the right to purchase insurance to any extent covering the deductible amount. This, he says, would alter the rule on file, which rule is deemed an integral part of the rating system, and so the determination of rates would also be affected. The Commissioner therefore claims that INA's proposed Deductible Insurance Plan is not merely a form, but a change affect-

ing rates, and so constitutes an alteration, supplement or amendment to a rating system, governed by *N. J. S. A.* 17:29A–14.

## II.

For purposes of orderly exposition, we again refer to *N. J. S. A.* 17:29A–6, which provides that

"* * * every insurer shall, before using or applying any rate to any kind of insurance, file with the commissioner a copy of the rating-system upon which such rate is based, or by which such rate is fixed or determined. The filing herein required may, on written notice by an insurer to the commissioner, be made on behalf of such insurer, by a rating organization of which such insurer is a member or subscriber. * * *"

*N. J. S. A.* 17:29A–7, referring to the rating systems noted in the preceding section, provides:

"If, after examination thereof, the commissioner shall find that such rating-systems * * * provide for, result in, or produce rates that are unreasonably high or excessive, or are not adequate for the safeness and soundness of the insurer, or are unfairly discriminatory between risks in this State involving essentially the same hazards and expense elements, he shall issue an order * * * directing that such rating-systems be altered in the manner and to the extent stated in such order, to produce rates that are reasonable and adequate, and not unfairly discriminatory. If the commissioner shall find that such rating-systems provide for, result in, or produce rates that are not unreasonably high, and are not inadequate for the safeness and soundness of the insurer, and are not unfairly discriminatory * * * he shall approve such rates, and such approval shall continue in effect until the commissioner shall, by order, direct that such rating-systems be changed or modified, * * *. *If the commissioner shall fail to approve or disapprove any rating-systems within ninety days from the filing thereof such rating-systems shall be deemed to be approved by him.* * * *." (Emphasis ours)

The section then goes on to state that whenever the Commissioner finds that rating systems theretofore approved by him provide for, result in, or produce rates which are unreasonable, or inadequate, or which discriminate unfairly, he shall issue an order directing that such rating systems be altered or revised in the manner and to the extent stated in the order.

Alterations, supplements or amendments to rating systems are dealt with in *N. J. S. A.* 17 :29A–14:

"A rating organization, or any insurer making its own rates, may, from time to time, alter, supplement, or amend its rating-systems, or any part thereof, by filing with the commissioner copies of such alterations, supplements, or amendments together with a statement of the reason or reasons for such alteration, supplement, or amendment. If such alteration, supplement or amendment shall have the effect of increasing or decreasing rates, the commissioner shall determine whether the rates as altered thereby are reasonable, adequate, and not unfairly discriminatory. If the commissioner shall determine that the rates as so altered are not unreasonably high, or inadequate, or unfairly discriminatory, he shall make an order approving them. If he shall find that the rates as altered are unreasonable, inadequate, or unfairly discriminatory, he shall issue an order disapproving such alteration, supplement or amendment."

The above quoted sections are part of the Insurance Rating Law, *L.* 1944, *c.* 27; *N. J. S. A.* 17 :29A–1 through 32.

*N. J. S. A.* 17 :36–5.22, part of the Standard Fire Insurance Policy Form Law, provides that appropriate forms of contracts, supplemental contracts, or extended coverage endorsements insuring against loss, damage or liability occasioned by any accident, incidence, occurrence or peril other than fire and lightning, may be filed with the Commissioner for use with or as a part of a fire insurance policy, by a licensed rating organization on behalf of any member or members, or by an insurer making its own filings. Further:

"No such form of contract, supplemental contract, or extended coverage endorsement shall be made, issued or delivered by any insurer or by any agent or representative thereof until after 30 days from the date of such filing."

If the Commissioner at any time notifies a rating organization or an insurer of his disapproval of any such filed form because he deems its provisions unjust, unfair, inequitable, misleading or contrary to law, it becomes unlawful for the insurer to issue the contract, supplemental contract or extended coverage endorsement in the form so disapproved.

INA claims, as indicated in our earlier description of the filings, that the Church, School-College Policy and the Retailers and Wholesalers Policy constitute original filings, except that the five forms of endorsement in the latter policy come within the provisions of *N. J. S. A.* 17:36–5.22, dealing with forms. It concedes that the Inland Marine Filing: Camera and Photographic Equipment Dealers, etc., Policy, the Merchants Property Policy and the Inland Marine Manual each constitute an alteration, supplement or amendment to a rating system, and so are subject to *N. J. S. A.* 17:29A–14. And, as noted, it contends that the Deductible Insurance Plan is a form, and therefore *N. J. S. A.* 17:36–5.22 applies. The Commissioner takes the position that all six filings constitute amendments to existing rate systems and forms and so must be dealt with under *N. J. S. A.* 17:29A–14.

The Commissioner took no action on the Church, School-College Policy filed by FIRO on May 29, 1962. The Retailers and Wholesalers Policy had been approved, as indicated, on May 11, 1962, except for the Annual Payment of Premium Plan and the five forms of endorsement. INA met with a representative of the Commissioner on June 15, 1962 in order to secure his approval of these excepted items. On June 27 INA again requested approval, but received no reply.

The Inland Marine Filing: Camera and Photographic Equipment Dealers, etc., Policy, filed May 14, was discussed with the Commissioner's representatives on June 15, 1962 and resulted in certain revisions. INA later supplied certain requested information and then heard nothing further from the Commissioner. The Merchants Property Policy, filed May 18, 1962, was also the subject of the June 15 conference, at which time the filing was explained. The explanation was repeated in a letter sent to the Commissioner on June 25, 1962. INA received no further word. The Inland Marine Manual revision was filed with the Commissioner on June 18, 1962, and on July 17 INA, upon request, forwarded an explanation of the filing and asked for approval. Approval

was again requested September 18 and October 4, 1962, but no reply was received.

As for the Deductible Insurance Plan filed August 1, 1962, INA supplied the Commissioner with an explanation of the filing on September 26 and again on October 18, 1962, both times pursuant to request made. It received no further word from the Commissioner.

INA finally notified the Commissioner on November 9, 1962 that the filings had become approved by operation of law, as follows:

| | *Effective* |
|---|---|
| Church, School-College Policy | August 29, 1962 |
| Retailers and Wholesalers Policy | September 27, 1962 |
| Inland Marine Filing: Camera and Photographic Equipment Dealers, etc., Policy | August 14, 1962 |
| Merchants Property Policy | September 24, 1962 |
| Inland Marine Manual revision | October 21, 1962 |
| Deductible Insurance Plan | September 2, 1962 |

Upon receipt of this letter, William A. Johnston, Chief of the Rating Division, Department of Banking and Insurance, advised INA that the "deemer" provisions of the Insurance Rating Law applied only to *initial* filings of rating systems, and since all of the six filings mentioned in INA's November 9 letter represented changes in existing rating systems, they must first be approved by the Commissioner before becoming operative in New Jersey. Use of the filings not yet approved would expose the company to the penalties prescribed under the provisions of the Insurance Rating Law. (The reference here was to *N. J. S. A.* 17:29A–22 and 23. See also *N. J. S. A.* 17:29A–18.)

On November 16, 1962 INA wrote the Commissioner that the "deemer" provisions did apply to the filings in question, so that they were now legally effective. It asked whether the views expressed by Mr. Johnston represented those of the Commissioner and, if so, whether his letter constituted an "order of the Commissioner" within the meaning of the Insurance Rating Law.

The Commissioner replied on November 29 affirming the position taken by Mr. Johnston and noting that the statute had been so construed for over 18 years. The Commissioner called attention to the fact that a bill had been passed in 1956 to provide for a 90-day "deemer" provision in *N. J. S. A.* 17:29A–14 (*Assembly Bill No.* 265), but it was vetoed by the Governor. A similar bill was introduced in 1961 (*Assembly Bill No.* 570), but did not pass. He expressed the hope that INA had not seen fit to activate the filings, "since such action would appear to be in wilful derogation of the Rating Law and require appropriate penalties to be imposed under the statute." This appeal followed.

### III.

The *amicus curiae* brief filed by the New Jersey Association of Insurance Agents argues that the appeal should be dismissed on jurisdictional grounds because there was no final decision or action by the Commissioner subject to review by this court, as required by *R. R.* 4:88–8(a). It notes that the Commissioner issued no order, as required by *N. J. S. A.* 17:29A–7 or *N. J. S. A.* 17:29A–14.

Viewing the matter realistically, the Commissioner's letter of November 29 was a direct reply to INA's letter of November 16 in which the company took the position that the "deemer" provisions of the Insurance Rating Law applied and that its six filings were effective. The Commissioner clearly expressed a contrary view in affirming what Rating Division Chief Johnston had said. He left no doubt that he would have to institute penalty proceedings if INA persisted in its position. We consider this as tantamount to a final determination. *Cf. Group Health Insurance Co. of New Jersey v. Howell,* 40 *N. J.* 436 (1963).

(In passing, it may be noted that following argument of the appeal the Commissioner on February 15 and 28 and March 7 and 8, 1963, formally disapproved the several filings, except for the Inland Marine Manual revision, which he approved February 19, 1963.)

## IV.

We deal first with INA's claim that its Church, School-College Policy and its Retailers and Wholesalers Policy comprise initial rating systems. If this contention is correct, the two filings became approved by operation of law as a result of the 90-day "deemer" provision of *N. J. S. A.* 17:29A–7.

The answer to this contention is found in *N. J. S. A.* 17:29A–6 which requires every insurer, "before using or applying any rate to any kind of an insurance," to file with the Commissioner a copy of the rating system upon which such rate is based or by which it is fixed or determined. The key words are "kind of insurance," and this phrase is defined in *N. J. S. A.* 17:17–1. Examples of a "kind of insurance" are: fire, public liability, inland marine, ocean marine, burglary, plate glass, fidelity and surety, aircraft liability, etc. Rating systems filed with the Commissioner are, accordingly, categorized for rating purposes upon *kinds* of insurance—not on various *classes* within a kind. Rating systems filed for additional classes, such as personal property, valuable papers, loss of income, etc., do not qualify as original rating systems, but are merely alterations, supplements or amendments to the basic rating system on file for a particular kind of insurance, and so subject to *N. J. S. A.* 17:29A–14.

It is not controverted that INA presently has on file with the Department of Banking and Insurance rating systems for the same kinds of insurance which are afforded under the two policies in question, namely, fire, burglary, liability, etc. What the two package plans proposed by INA do is merely to combine kinds of insurance already on file and to change eligibility provisions. Neither plan creates a new kind of insurance, and therefore does not involve an original rating system or constitute a new filing.

In its reply brief INA contends that the Annual Premium Payment Plan included in its proposed Retailers and Whole-

salers Policy is an original rating system because such a plan was not in existence prior to the time it filed that policy with the Commissioner through FIRO. But we are informed, and it is not contradicted, that the premium payment plan submitted by FIRO on behalf of the company in 1944, the year the Insurance Rating Law went into effect, attaches to all fire and allied line policies. That being so, for INA to propose a change in the basic premium payment plan for any fire or allied line policy, such as the Retailers and Wholesalers Policy, is to alter or amend the basic plan which FIRO filed. Accordingly, *N. J. S. A.* 17:29A–7 does not apply to this feature of the Retailers and Wholesalers Policy, and *N. J. S. A.* 17:29A–14 does.

The core of a package policy is fire insurance, the standard form of which (the "165-line" policy) is fixed by *N. J. S. A.* 17:36–5.20, part of the Standard Fire Insurance Policy Form Law of 1954 (*c.* 268). Section 7 of that law, now *N. J. S. A.* 17:36–5.21, provides that every policy of fire insurance may, subject to the provisions of section 1 (*N. J. S. A.* 17:36–5.15) as to filing with and possible disapproval by the Commissioner, include any other insurances which the insurer is authorized to make. The distinction between contracts drawn pursuant to the authority granted by *chapter* 268 (such as package policies) and "policies of marine, inland marine, motor vehicle or aircraft insurance whose provisions insure against or include insurance against the peril of fire," is expressly recognized by section 11 (*N. J. S. A.* 17:36–5.25). *L.* 1959, *c.* 134 (now *N. J. S. A.* 17:36–5.28), a supplement to *chapter* 268, enacted for the purpose of permitting a nuclear reaction or nuclear radiation or radioactive contamination exclusion clause, refers to "Insurers issuing a fire insurance policy or *any permissible variation thereof,* pursuant to the act to which this act is a supplement. * * *" (Emphasis ours)

██ It is impossible to read provisions like these and conclude that package policies represent a new "kind of insurance" for purposes of rate regulation, rather than a

method for supplementing or varying a policy of fire insurance. The mere arrangement of various recognized types or kinds of insurance within a given policy does not create an entirely new "kind of insurance." If this were so, it would be possible to create any number of new "kinds of insurance" combining different insurance coverages. It is obvious that rate regulation without reference to the components of a package policy would be extremely difficult, if not practically impossible, thereby depriving the public of the protection which the State has undertaken to provide.

We therefore conclude that the Church, School-College Policy and the Retailers and Wholesalers Policy did not become approved by operation of law because the Commissioner failed to approve or disapprove either of them within the 90-day period fixed by *N. J. S. A.* 17:29A–7.

## V.

INA contends that even if it be found that the two policies just discussed are merely alterations, supplements, or amendments to rating systems, and therefore governed by the provisions of *N. J. S. A.* 17.29A–14, they must still be considered as approved by operation of law because of the 90-day "deemer" provision in *N. J. S. A.* 17:29A–7. The Insurance Rating Law, it contends, must be read as a whole, and the two cited sections construed together so as to effectuate a complete statutory scheme. It advances several arguments in support of this position. It first points to the language italicized in our quotation from *N. J. S. A.* 17:29A–7: "If the commissioner shall fail to approve or disapprove any rating-systems within ninety days from the filing thereof such rating-systems shall be deemed to be approved by him." INA asserts that "any rating-systems" refers not only to an original rating system, but also to any alteration, supplement or amendment, so that the 90-day provision must be imported into *N. J. S. A.* 17:29A–14.

The weakness of this argument is exposed by the sequence of the statutory provisions. The Insurance Rating Law first sets out the controlling definitions (*N. J. S. A.* 17:29A–1). It then provides for the licensing of rating organizations (*N. J. S. A.* 17:29A–2) and membership therein by insurers (*N. J. S. A.* 17:29A–3). Next follows the section dealing with the method for establishing rates (*N. J. S. A.* 17:29A–4) and that dealing with statistical reports (*N. J. S. A.* 17:29A–5). The filing of rating systems is provided for in *N. J. S. A.* 17:29A–6. This is followed by *N. J. S. A.* 17:29A–7, providing for the approval or disapproval of rating systems by the Commissioner and containing the 90-day "deemer" provision. This section begins with the words, "If, after examination thereof, the commissioner shall find that *such rating-systems,* etc." This language clearly refers back to an original rating system filed under *N. J. S. A.* 17:29A–6. *N. J. S. A.* 17:29A–10 sets up a method whereby an insurer may apply to the Commissioner for leave to effect a uniform percentage decrease or increase in the rates applied by it to a particular kind or kinds of insurance. This section contains no "deemer" provision. Later comes *N. J. S. A.* 17:29A–14, which outlines the method of making changes in rating systems and calls for their approval or disapproval by the Commissioner. It, too, contains no "deemer" clause. The order in which the statutory paragraphs appear clearly indicates that the 90-day "deemer" provision of *N. J. S. A.* 17:29A–7 applies only to original rate filings.

The second argument made by INA is that while *N. J. S. A.* 17:29A–7 provides that the Commissioner may direct that previously approved rating systems be altered or revised when he finds that they produce rates which are unreasonable or inadequate, or which discriminate unfairly between risks, *N. J. S. A.* 17:29A–14 contains no similar procedure whereby the Commissioner may direct that an approved alteration, supplement or amendment to a rating system be altered or revised because it produces an unreasonable, inadequate or discriminatory rate. Thus, it is said, the latter section is not

complete within itself and must be read in conjunction with
*N. J. S. A.* 17:29A–7 in order to effectuate an integrated
statutory scheme. The argument would ordinarily be persua-
sive were it not for other considerations of which we must
take note. There is an obvious (and perhaps intentional)
legislative gap in *N. J. S. A.* 17:29A–14, as adopted in 1944,
unless it can be said that the Commissioner, in the exercise
of the broad powers lodged with him by the Legislature, may
inferentially at any time direct that the alteration, supple-
ment or amendment be revised in the light of insurance
experience.

 Finally, INA argues that the Insurance Rating Law
is penal and should be strictly construed against the State.
*Coro Brokerage, Inc. v. Rickard,* 29 *N. J.* 295, 301 (1959).
However, strict construction should not blind us to reading
the statute without regard to the evil or mischief to be sup-
pressed. The Insurance Rating Law clearly demonstrates
that the purpose of the Legislature in granting the Commis-
sioner power to approve or disapprove rating systems is to
protect the public and the insurance industry from unreason-
ably high or inadequate or discriminatory rates. Commis-
sioner approval insulates against insurance companies solicit-
ing business at rates which might have a disastrous effect.
This underlying statutory rationale should not be slighted by
an unqualified acceptance of the strict construction argument
urged upon us.

Whatever appeal INA's arguments may at first blush pre-
sent, the fact is that we may not read into a statute some-
thing which the Legislature failed to include. *Cf. Publix
Asbury Corp., Inc. v. Asbury Park,* 18 *N. J. Super.* 286
(*Ch. Div.* 1952), affirmed 18 *N. J.* 192 (*App. Div.* 1952).
There is no "deemer" provision in *N. J. S. A.* 17:29A–14.
The legislative omission is patent. Twelve years after the
passage of the Insurance Rating Law the 1956 Legislature,
as previously noted, passed *Assembly Bill No.* 265 which
would have amended *N. J. S. A.* 17:29A–14 by adding the
following:

"If the commissioner shall fail to approve or disapprove any such filing within 90 days from the date it was received, then such filing shall be deemed to be approved by him."

The bill was vetoed by the Governor as "contrary to the public interest, and more particularly to the interest of that portion of the public which must pay insurance premiums." Continuing, the Governor said:

"It is unreasonable and it is unfair, both to the public and to the insurance companies involved, to require the Commissioner to make a final determination within an arbitrary 90-day period instead of allowing him such time as may be necessary to enable him to determine whether the rates as altered, supplemented or amended by the filing are in fact reasonable, adequate and not unfairly discriminatory."

Although one may not agree with the reasoning of the veto message—and we will shortly refer to it again—the end result was that the enactment did not become law. (If 90 days may prove too short a period for the Commissioner to approve or disapprove an alteration, supplement or amendment, it would seem that it would also be too short a time for him to make a determination on an original filing which, it can fairly be said, is in most cases at least as important as any change in a rating system.)

There was a similar attempt made, in 1961, to amend *N. J. S. A.* 17:29A–14. The bill (*Assembly No.* 570) never passed.

In the light of this legislative history, it is not for us to say at this late date that the legislative "intention" in 1944 was to have the 90-day provision of *N. J. S. A.* 17:29A–7, applicable in the case of original filings, carry over into *N. J. S. A.* 17:29A–14, dealing with alterations, supplements or amendments of rating systems. This is a classical case of *casus omissus*, with belated but ineffective legislative attempts at correction.

In addition to the legislative history there is also the construction given *N. J. S. A.* 17:29A–14 by the Commissioner in the more than 18 years since the Insurance Rating Law

was passed in 1944, to the effect that no "deemer" provision is applicable to that section. The Commissioner made mention of this long-standing administrative construction in his letter determination of November 29, 1962 addressed to INA. Our courts have held that a reasonable construction given to a statute by the administrative agency charged with its execution is entitled to considerable weight and presumed to be correct. *Lane v. Holderman*, 23 *N. J.* 304, 322 (1957); *Delaware Tp. v. Neeld*, 52 *N. J. Super.* 63, 70 (*App. Div.* 1958). As was said in *Essex County Retail Liquor Stores Ass'n v. Newark Municipal Board of Alcoholic Beverage Control*, 64 *N. J. Super.* 314, 322 (*App. Div.* 1960), "administrative construction of the relevant statute is entitled to great weight, especially when such construction is substantially contemporaneous with the enactment of the statute and is followed for many years. [citations omitted]" And see *Harper v. New Jersey Mfrs. Cas. Ins. Co.*, 1 *N. J.* 93, 98 (1948).

INA's argument must therefore fall, not only as to the Church, School-College and the Retailers and Wholesalers Policies (considered as alterations, supplements or amendments to existing rating systems), but as to the Inland Marine Filing: Camera and Photographic Equipment Dealers, etc., Policy, the Merchants Property Policy, and the Inland Marine Manual revision—all three admittedly subject to *N. J. S. A.* 17:29A–14.

We are not insensitive to the potential inequity which might be visited upon insurers by the present rating law pattern. It is not beyond reason to say that in certain circumstances the prompt approval or disapproval of an alteration, supplement or amendment to an existing rating system may be just as important to a company, from the point of view of not being disadvantaged in as highly competitive a field as insurance, as the approval or disapproval of an original rating system. The argument projected by the Commissioner (and reflected in the Governor's veto message above), that 90 days may be too short a period to decide

whether the change in a rating system is to be approved or disapproved, carries little appeal. The model rating law drafted by the Committee on Rates and Rating Organizations of the National Association of Insurance Commissioners and subsequently adopted by almost 40 states, had a "deemer" clause providing for a waiting period of 15 days plus an optional waiting period of 15 additional days, or 30 in all. The report of the committee stated that this 30-day period "under most circumstances would afford the Commissioner ample time within which to review a filing before it took effect and at the same time would not unduly impede the expeditious transaction of business." *Proceedings of the National Association of Insurance Commissioners*, 1946, *pp.* 367–368. Of the states having a "deemer" provision, applicable to both original and amendatory filings, 23 have the 15 plus 15-day provision, one 15 plus 30, three 30 plus 15, three 30 plus 30. Some have only an original period: three 15 days, one 30, and New Jersey 90—by far the longest period of any state and applicable only, as we have seen, to original filings.

The time problem here is purely an administrative one and can readily be met by acquiring sufficient staff. The delay encountered by INA in trying to get approval or disapproval of its filings need not have occurred. In fairness to both the insurers and the public it should not be allowed to reoccur. The "deemer" gap in *N. J. S. A.* 17:29A–14 can, of course, only be bridged by legislative action. The reasons advanced in the 1956 veto message need not stand in the way. They are readily answerable—certainly so the second reason for the veto, not yet mentioned: that the 90-day automatic approval provision in *N. J. S. A.* 17:29A–7 was necessary to permit companies "to continue insurance underwriting operations in New Jersey during the initial period following the enactment of the 1944 act [*c.* 27]." The very section mentioned provides the rebuttal, for its last sentence reads:

"Rating-systems filed with the commissioner on or before the effective date of this act * * * shall be deemed to have been

approved by the commissioner, such approval to continue in effect until the commissioner shall, by order, direct that such rating-system be altered or modified as in this section provided."

(As to compliance where the rating system was filed with the Commissioner before the effective date of the act, see *N. J. S. A.* 17:29A–6.)

## VI.

Turning to the Deductible Insurance Plan, the sixth of the filings, it will be recalled that INA claims this is a form coming within *N. J. S. A.* 17:36–5.22, whereas the Commissioner contends that it represents an alteration, supplement or amendment to a rating system. INA, as already stated, points out that the Deductible Insurance Plan filed on its behalf by FIRO contains no rates, nor is it used to ascertain rates. The change of form merely modified the prohibition against securing insurance to cover the deductible amount. It reads: "The deductible amount may not be specifically insured, except that the insured may obtain coverage on an annual aggregate stop-loss basis to hold the annual aggregate of self-insured losses to a specific amount."

The argument of the Commissioner is that if an insured is allowed to purchase another policy to cover the amount of the deductible, his total premium for the full amount covered will be much less than if he purchases full coverage on a single policy, and this will result in a definite rate advantage and unfair discrimination. He asserts that the proposed change in the Deductible Insurance Plan would affect the determination of rates. Not a single fact is advanced to support the argument. There is nothing to show that the total premium paid by the insurer will be less than if he bought full coverage in a single policy. Since so many losses fall within the deductible amount, it would appear that the premium for a separate policy covering the deductible would be rather heavy, resulting in a higher total premium. Nor is there any proof that INA's plan affects the determination of rates.

The question then remains: Did the Deductible Insurance Plan become approved by operation of *N. J. S. A.* 17:36–5.22 because the Commissioner did not act within 30 days? INA refers to the 30-day provision of that section as a "deemer" clause. This is not accurate. *N. J. S. A.* 17:36–5.22 merely states that no form of contract, supplemental contract, or extended coverage endorsement shall be made, issued or delivered by any insurer or by any agent or representative thereof "until after 30 days from the date of such filing." INA was therefore free to use the Deductible Insurance Plan after the 30-day period had expired, since the Commissioner had not in the meantime notified it of his disapproval.

However, *N. J. S. A.* 17:36–5.22 provides that if the Commissioner shall, "at any time," notify any rating organization or any insurer of his disapproval of any form of contract, supplemental contract or extended coverage endorsement because he considers its provisions "unjust, unfair, inequitable, misleading or contrary to law," it shall be unlawful for any insurer to issue such form. After the argument of this appeal the Commissioner, on February 15, 1963, disapproved INA's filing of its Deductible Insurance Plan. This was a proper exercise of the statutory power.

One other matter requires consideration—the five forms of endorsement which were part of the Retailers and Wholesalers Policy filing. The Commissioner had, as already stated, approved the policy except for its Annual Payment of Premium Plan and the five forms of endorsement. In his answering brief, the Commissioner admits that the endorsements fall under *N. J. S. A.* 17:36–5.22. This being so, INA was free to use them after the expiration of 30 days from the date of the filing. However, as heretofore noted, after the argument of this appeal and on March 8, 1963 the Commissioner, in the exercise of his power under *N. J. S. A.* 17:36–5.22, disapproved the endorsements so that INA could not use them after that date. He at the same time also disapproved the Annual Payment of Premium Plan.

## VII.

We therefore conclude that the Church, School-College Policy and the Retailers and Wholesalers Policy were not original filings under *N. J. S. A.* 17:29A–7 so as to become operative after the expiration of the 90-day "deemer" period. They were alterations, supplements or amendments to existing rating systems, subject to *N. J. S. A.* 17:29A–14, which contains no "deemer" provision.

The 90-day "deemer" clause of *N. J. S. A.* 17:29A–7 may not be construed as part of *N. J. S. A.* 17:29A–14. Accordingly, neither of the two policies just mentioned, nor the Inland Marine Filing: Camera and Photographic Equipment Dealers, etc., Policy, the Merchants Property Policy, or the Inland Marine Manual revision could be considered as approved by operation of law.

The Deductible Insurance Plan and the five endorsements to the Retailers and Wholesalers Policy were forms, subject to the provisions of *N. J. S. A.* 17:36–5.22, and could be used after the expiration of the 30-day period following their filing and until the Commissioner by his respective orders disapproved them.

The Commissioner has now, although somewhat belatedly, approved one filing, the Inland Marine Manual, and disapproved the remaining five. His orders of disapproval were proper under the law as it presently stands.